Ronnie L.R. NIXON, Plaintiff,

v.

The INDIVIDUAL HEAD OF the ST. JOSEPH MORTGAGE CO., et al., Defendants.

Civ. No. S 84–488.

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 6, 1985.

Ronnie L.R. Nixon, pro se.

Mark J. Phillipoff and Thomas F. Lewis, Jr., Jones, Obenchain, Johnson, Ford, Pankow & Lewis, South Bend, Ind., for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendants' motion to dismiss the amended complaint. For the following reasons, the motion will be granted.

■ Petitioner is proceeding *pro se*. *Pro se* pleadings are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The district court's role is to ensure that the claims of *pro se* litigants are given "fair and meaningful consideration." *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir.1984); *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir.1982). This court also recognizes that federal courts have historically exercised great tolerance to ensure that an impartial forum remains available to plaintiffs invoking the jurisdiction of the court without the guidance of trained counsel. *Pro se* motions and complaints such as the petitioner's are held to less stringent pleading requirements; rigor in the examination of such motions, complaints and pleadings is inappropriate.

This cause arises out of a loan made by the St. Joseph Mortgage Company, Inc. to plaintiff Nixon. In September, 1981, Nixon and the Mortgage Company executed a loan agreement whereby the Mortgage Company loaned Nixon $24,900.00, and secured the loan with a mortgage on Nixon's home. Nixon now sues the Mortgage Company and others, claiming breach of contract, fraud, usury, "illegality," unjust enrichment and two counts of racketeering because the Mortgage Company did not have "legal money" (i.e., gold and silver coin) on deposit to back up the loan, but instead had only "credit and checkbook money"—a bookkeeping entry for the loan—which cannot be legal tender. Nixon claims that the Mortgage Company prom-ised to pay "money," and by "paying" a bookkeeping entry, they violated the constitutional provisions which Nixon believes require that all money be gold or silver coin, thus tortiously harming Nixon.

The Individual Head of the Mortgage Company filed a motion to dismiss, which this court treats as being filed on behalf of all defendants in this cause. The court therefore turns to this motion.

## *Motion to Dismiss*

In deciding a motion to dismiss for failure to state a claim, this court must take the well pleaded factual allegations of plaintiff's complaint as true. *Ashbrook v. Hoffman*, 617 F.2d 474 (7th Cir.1980). A complaint should be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). However, *Conley* has never been interpreted literally. *Sutliff, Inc. v. Donovan Companies*, 727 F.2d 648, 654 (7th Cir.1984). The test is whether a complaint contains either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984). This court must consider the complaint in the light most favorable to the plaintiff and must resolve every reasonable doubt in favor of the claimant. *Henry C. Beck Co. v. Fort Wayne Structural Steel*, 701 F.2d 1221 (7th Cir.1983). "The heavy costs of modern federal litigation ... counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint." *Sutliff*, 727 F.2d at 654.

Reduced to its bare essentials, Nixon's claim against the Mortgage Company is that it failed to have lawful money (in gold and silver coin) *in its vault equal to the amount of the loan*, so that it did not loan

dollars to Nixon (as promised) but mere "credit or checkbook money." The premise behind the amended complaint is that a check written on the Mortgage Company's credit is not lawful tender, as only government-issued currency is legal tender.

The court finds Nixon's arguments and claims absurd for several reasons. First, a check issued by a bank or mortgage company need not be "legal tender" for a loan to be valid. Here, the Mortgage Company issued Nixon a check to use in buying his residence, and Nixon in fact got the house (subject, of course, to the mortgage entered into between the parties). What fraud was possibly worked on Nixon? He claims that the Mortgage Company said it would pay in dollars but did not have dollars available to back up the representation. Yet whether money was in the vault or not, the check issued by the Company had the same effect: it allowed Nixon to buy his house.

Second, while the check was not legal tender in the sense of a dollar bill or coins, it nevertheless had many of the same qualities of negotiability. The check itself is a negotiable instrument under the terms of Articles 3 and 4 of the Uniform Commercial Code, and because of those provisions, can be negotiated and used as a medium of exchange between private parties if they agree. While dollar bills and coins have been declared by Congress as legal tender, see 31 U.S.C. § 5103, and so can be used to pay any debt, not all debts need be paid in legal tender if the parties agree. Here, the Mortgage Company issued a check to Nixon, who then gave it to the seller of the house which Nixon bought. The check apparently satisfied the seller, who has not sued Nixon for some "fraudulent payment," and Nixon received his house in exchange for turning the check over to the seller. Such transactions occur every day, and the negotiable check used in the transaction has value, so that the sale can be consummated.

■ Third, a bank or mortgage company check can be converted into legal tender. The seller of Nixon's house no doubt took the check to his bank and cashed it, or else used it in another transaction. Most any check (and certainly one drafted by a mortgage company) can be taken to a bank and "cashed"—that is, exchanged for federal reserve notes in an amount equal to the value stated on the check. Federal reserve notes are legal tender, see *Birkenstock v. Commissioner of Internal Revenue*, 646 F.2d 1185, 1186 (7th Cir.1981); *United States v. Rickman*, 638 F.2d 182, 184 (10th Cir.1980); *United States v. Ware*, 608 F.2d 400, 402–04 (10th Cir.1979); *United States v. Schmitz*, 542 F.2d 782 (9th Cir.1976), *cert. denied*, 429 U.S. 1105, 97 S.Ct. 1134, 51 L.Ed.2d 556 (1977), so that the Mortgage Company's check is like a promise to pay legal tender, redeemable at many banks or financial institutions. This promise to pay is an obligation of the Mortgage Company, which will at some point after issuing the check be forced to pay by giving something worth the face value of the check to the bearer or indorsee of the check. It represents a liability of the company, so that the Mortgage Company has in fact given something of value—its promise to pay the face amount of the check.

■ Fourth, Nixon's arguments based on the restriction of article 1, § 10 of the Constitution, which mandates that "no state shall ... make anything but gold and silver Coin a Tender in Payment of Debts ..." misses the mark here. The defendants are private individuals and a mortgage company, not the State of Indiana (or any other state). Private parties may enter into transactions to trade whatever they agree on as having equal value; they are not limited to gold and silver coins. Here, the Mortgage Company traded its check for Nixon's promise to pay on the promissory note executed at the time of the mortgage's creation. Nixon in turn traded the check for the house. Neither transaction implicates or violates a constitutional restriction *on the states*.

■ Finally, this lawsuit smacks of bad faith on the part of the plaintiff. Nixon obtained the check in September, 1981 and used it to purchase his residence. In late

1984, after the Mortgage Company begins proceedings to foreclose the mortgage, Nixon suddenly files this suit seeking in effect to have the loan *with which he obtained his residence* declared illegal so as to back out of his contractual promise to pay on the loan. He has enjoyed the fruits of what the Mortgage Company's check bought, yet seeks to nullify that check on the basis of an absurd view that bank or mortgage company checks are worthless attempts to create "illegal tender." Nixon's own experience in getting a residence with the check indicates that the market place recognizes the value of "credit and checkbook money," so that Nixon has suffered no damages and has no valid calim to advance here.

In Nixon's other two cases, *Nixon v. The Individual Head of the St. Joseph Mortgage Co.*, 612 F.Supp. 253 (N.Ind. 1985), and *Nixon v. Phillipoff*, 615 F.Supp. 890 (N.Ind.1985) this court found Nixon's claims frivolous and deserving of sanctions under Rule 11 of the Federal Rules of Civil Procedure. This case warrants such sanctions as well, especially in light of the fact that Nixon used the allegedly worthless check to buy his home. Given the fact that this suit was filed near the time that the Mortgage Company began foreclosure proceedings against Nixon, there is also an element of attempting to harass these defendants through the filing of dilatory and groundless lawsuits, a practice which the Seventh Circuit has found worthy of the imposition of sanctions. *Glick v. Koenig*, 766 F.2d 265, 270 (7th Cir.1985).

Examination of the court file in this case reveals that Nixon filed more than thirty-five documents, motions, affidavits, notices, and memoranda. They included such documents as a Lis Pendens, two Writs of Prohibition and Caveat and Nunc Pro Tunc, and a Notice of Common Law Lein (sic). These numerous filings required the attorneys of record to read, analyze, and respond to each filing, thereby requiring significant expenditure of time on a frivolous lawsuit. In addition, counsel attended a status conference in Fort Wayne, Indiana, and a second conference by phone which Nixon did not participate in. A very conservative estimate of the fees incurred in dealing with this case is one thousand dollars ($1,000.00), which the court will award as attorneys' fees under Rule 11.

The burden on this court in dealing with Nixon's numerous filings and groundless claim is equally as great as that on defense counsel. The docket sheet in this case indicates no less than 72 different entries reflecting filings received and docketed by the court and other actions required by the court or its employees. The expenditure of judicial resources in this case is especially egregious in light of the facts, where Nixon obviously used the check to buy his house, and seeks to declare the check worthless only when the loan went into foreclosure. The "appropriate sanctions" recognized by Rule 11 can certainly include fines payable to the Clerk of this court. The court will therefore assess a fine of five hundred dollars ($500.00) as an appropriate and justified sanction under Rule 11.

For the reasons above, the motion to dismiss is hereby GRANTED, and this cause is DISMISSED in its entirety. Plaintiff is hereby ORDERED to pay one thousand dollars ($1,000.00) for attorney's fees as a sanction for filing this lawsuit. In addition, plaintiff is hereby ORDERED to pay a fine of five hundred dollars ($500.00) to the Clerk of this court as a further Rule 11 sanction.