Jean **RENE** and Brigitte Rene,
His Wife, Plaintiffs,

v.

**CITIBANK NA,** Zeichner, Elleman & Krause, OCI Mortgage Corporation, and Glenn L. Stephenson, Defendants.

No. 94 CV 5163 (ADS).

United States District Court,
E.D. New York.

Jan. 11, 1999.

Jean Rene and Brigitte Rene, Selden, NY, pro se.

Zeichner, Elleman & Krause, New York City (David Gerard, of counsel), defendant pro se and Attorneys for the Defendant Citibank.

Glenn L. Stephenson, P.C., Seaford, NY (Glenn L. Stephenson, of counsel), defendant pro se and Attorney for the Defendant OCI Mortgage Corporation.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In a Memorandum of Decision and Order dated March 21, 1998, this Court dismissed the plaintiffs' first amended complaint pursuant to Fed.R.Civ.P. 8, without prejudice and with leave to file a second amended complaint, after finding that the first amended complaint was "prolix, confusing and argumentative."

At issue are motions by the defendants Citibank NA ("Citibank"), and Zeichner,

Elleman & Krause ("ZEK"), in which Glenn L. Stephenson ("Stephenson") and OCI Mortgage Corporation ("OCI") join, to dismiss the plaintiffs' second amended complaint (the "Complaint") on the following grounds: (1) pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction; (2) pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted; (3) pursuant to Fed.R.Civ.P 12(b)(5) for defective service of process; and (4) pursuant to Fed.R.Civ.P. 9(b) for failure to plead the claim of fraud with sufficient particularity and specificity.

## I. BACKGROUND

The following facts are taken from plaintiffs' Complaint. The plaintiffs assert that on or about August 18, 1988, Citibank approved them for a loan, to purchase a home, in the sum of $139,500.00, at an interest rate of 11.375%. On August 18, 1988 the plaintiffs went to closing on the house and signed a mortgage agreement with Citibank. At an unspecified time thereafter, OCI and Stephenson purchased the plaintiffs' mortgage from Citibank. On August 18, 1996, OCI and Stephenson commenced eviction and foreclosure proceedings against the plaintiffs for failure to make payments "at the sixth district court of Suffolk." On July 23, 1997, the plaintiffs were forcibly removed from their home.

The Complaint includes claims against the defendants, both individually and collectively, under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., 42 U.S.C. § 1983, and related state law claims for common-law fraud, usury and breach of contract. The plaintiffs allege that: (1) Citibank breached the mortgage agreement by failing to lend "lawful money of the United States"; (2) that Citibank perpetrated a fraud by lending such unlawful monies; (3) that by creating this unlawful debt Citibank has engaged in the collection of usurious interest rates, and racketeering activity, including mail and wire fraud; and (4) that Stephenson and OCI "unlawfully" created a debt by purchasing the Citibank mortgage and, in violation of the plaintiffs' 14th Amendment rights, forcibly removed

the plaintiffs from their home. As far as the Court can discern, the plaintiffs assert no claims against ZEK.

## II. DISCUSSION

### A. The Plaintiffs' Pro Se Status

In addressing the defendant's motion, the Court is mindful that the plaintiffs are proceeding *pro se* and that their submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir.1998) (citations omitted). The Court recognizes that it must make reasonable allowances so that these *pro se* plaintiffs do not forfeit their rights by virtue of their lack of legal training. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). However, the plaintiffs' *pro se* status does not "exempt [them] from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

### B. ZEK's Motion to Dismiss

Fed.R.Civ.P. 8(a) requires a plaintiff to set forth in the complaint a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." The complaint must at least "sufficiently appraise a defendant of the charges asserted against it." *Humpherys v. Nager*, 962 F.Supp. 347, 351 (E.D.N.Y.1997) (quoting *Gould v. Russi*, 830 F.Supp. 139, 143 (N.D.N.Y.1993)). As noted above, a review of the Complaint reveals that the defendant ZEK is mentioned only once: in the caption. "The complaint does not provide any facts to indicate how [ZEK] could have injured [the plaintiffs]. 'The courts have consistently held that, where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" *Humpherys v. Nager*, 962 F.Supp. at 351 (quoting *Morabito v. Blum*, 528 F.Supp. 252, 262 (S.D.N.Y.1981) [granting 12(b)(6) motion to dismiss where defendant was

named only in caption and noting that complaint fails to meet standard of Fed.R.Civ.P. 8(a)] ). Since apparently no claims are raised against the defendant ZEK, the Complaint fails to meet the minimal threshold of notice pleading established by Rule 8, and the firm's motion to dismiss the Complaint, as against it, is granted.

### C. The Defendants' Rule 12(b)(1) Motions to Dismiss for Lack of Subject Matter Jurisdiction: The Standard

■ All of the defendants move to dismiss the Complaint pursuant to Rule 12(b)(1) on the ground that this Court lacks subject matter jurisdiction. Federal subject matter jurisdiction exists only when a "federal question" is presented under 28 U.S.C. § 1331, or, as provided in 28 U.S.C. § 1332, where the plaintiffs and all the defendants are of diverse citizenship and the amount in controversy exceeds $75,000. Where jurisdiction is lacking, the district court must dismiss the Complaint without regard to the merits of the lawsuit. *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996). Here, the plaintiffs assert that federal subject matter jurisdiction is predicated on federal question and diversity jurisdiction.

■ "In considering motions to dismiss for want of subject matter jurisdiction, the Court must accept as true all material factual allegations in the Complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *Serrano v. 900 5th Ave. Corp.*, 4 F.Supp.2d 315, 316 (S.D.N.Y.1998) (citing *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)). The district court, however, is not merely confined to the four corners of the Complaint. "On a motion under Fed. R.Civ.P. 12(b)(1) challenging the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Id.* (citations omitted) (internal quotations omitted).

### 1. *Diversity Jurisdiction*

■ As indicated above, to invoke diversity of citizenship jurisdiction, the plaintiffs must establish that there is complete diversity between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Complete diversity means that no plaintiff is a citizen of the same state as any defendant. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir.1990) ("It is well established that for a case to come within this statute there must be complete diversity and that diversity is not complete if any plaintiff is a citizen of the same state as any defendant.").

■ The defendants assert that the plaintiffs and the defendants ZEK and Citibank are citizens of New York and, as such, there is no diversity of citizenship. Despite their assertion in their opposition papers that the parties are diverse, the plaintiffs concede in their Complaint that ZEK and Stephenson are citizens of New York. (Compl., ¶ 2). By the plaintiffs' own admission, therefore, diversity of citizenship is lacking and they may not invoke subject matter jurisdiction on that basis.

### 2. *Federal Question Jurisdiction*

■ To invoke "federal question" jurisdiction, the plaintiffs' claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Second Circuit has found that, in determining whether federal question jurisdiction exists, the Court should not look to see if the plaintiff could recover on their claims. *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir.1990) (internal quotation omitted) (citations omitted). "Instead, the test is whether 'the cause of action alleged is so patently without merit as to justify ... the court's dismissal for want of jurisdiction.'" *Id.* (quoting *Hagans v. Lavine*, 415 U.S. 528, 542–43, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)). Consequently, a federal question claim should only be dismissed for want of subject matter jurisdiction if it is " 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). Thus, "[s]ubject matter jurisdiction exists as long as a Complaint

states a colorable federal claim." *Rodriguez by Rodriguez v. DeBuono,* 162 F.3d 56, 60 (2d Cir.1998) (citing *Savoie v. Merchants Bank,* 84 F.3d 52, 57 (2d Cir.1996)).

 The defendants argue that this Court lacks federal question jurisdiction under 28 U.S.C. § 1331 because the defendants are not "state actors," a necessary element of the plaintiffs' Section 1983 claim. The Court disagrees that this serves as a basis for dismissal under 12(b)(1). The defendants' argument is relevant only to the plaintiffs' civil rights claims under Section 1983, and does not address the plaintiffs' RICO claims, which contain no element of "state action." In any event, to the extent the defendants contend that they are not amenable to a Section 1983 suit because they did not act under color of state law, such arguments are more appropriately raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Rodriguez by Rodriguez v. DeBuono,* 162 F.3d at 60–61 ("The issue of whether 42 U.S.C. § 1396a(a)(10)(B) provides an enforceable private right of action pursuant to § 1983, therefore, does not implicate jurisdiction. Rather, it is more aptly viewed as a question of whether the plaintiffs have failed to state a claim upon which relief may be granted.")

### 3. *The Rooker– Feldman Doctrine*

The Court concludes that it lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine, because the plaintiffs' Complaint implicitly and explicitly seeks to have this Court review a final decision of the state court. Specifically, the plaintiffs ask this Court to review the state court's judgment of foreclosure and eviction, by seeking damages for the loss of their property, and "declaring the mortgage null and void" (Complaint, at p. 9). This is a direct attack on the state court foreclosure and eviction.

 This Court lacks subject matter jurisdiction to review a final state order, because "[t]he jurisdiction of the district courts is strictly original." *Olitt v. Vacco,* 1998 WL 901727, *2 (S.D.N.Y. Dec.28, 1998) (quoting *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923)). A district court lacks "authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *see also Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 197 (2d Cir.1996) (noting that under the *Rooker–Feldman* doctrine, "inferior federal courts have no subject matter jurisdiction over cases that effectively seek review of judgments of state courts"). Consequently, this Court is without jurisdiction if the issues raised in the plaintiffs' Complaint are inextricably intertwined with a state court judgment; that is, the federal claim would succeed only if the state court wrongly decided the issue.

 The claims raised in the plaintiffs' Complaint implicate the propriety of the state judgment of foreclosure and eviction—the very issues apparently decided by the state court. Because the *Rooker–Feldman* doctrine compels a federal court to give full faith and credit to the judgments of state courts, see 28 U.S.C. § 1738, this Court is without subject matter jurisdiction to hear this case. Accordingly, the defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is granted, and the Complaint is dismissed.

### D. The Defendants' Rule 12(b)(6) Motions to Dismiss for Failure to State a Claim: The Standard

Even if the Court were to conclude that the *Rooker–Feldman* doctrine was not a bar to this suit, it nevertheless would grant the motion to dismiss under Fed.R.Civ.P 12(b)(6) for failure to state a claim upon which relief can be granted.

On a motion to dismiss for failure to state a claim, the Court should dismiss the Complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *See S.E.C. v. U.S. Environmental, Inc.,* 155 F.3d 107, 110 (2d Cir.1998); *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41 (2d Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In making this assessment, the Court must accept the alle-

gations of the Complaint as true, and construe all reasonable inferences in favor of the plaintiffs. *See Connell v. Signoracci,* 153 F.3d 74 (2d Cir.1998); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991).

The plaintiffs allege in their Complaint that they applied for a mortgage through Citibank for "lawful money of the United States." (Compl., ¶ 4). Instead of lending them such funds, the plaintiffs contend, Citibank fraudulently, and in breach of their contractual obligations, gave them a check (Compl., ¶ 8). The plaintiffs contend that this check did not represent legal tender because it was not backed by "lawful money" (i.e., gold, coins, federal reserve notes). In essence, the plaintiffs' claim is that Citibank did not have an amount equal to the face value of their loan in their vault, so that Citibank did not loan plaintiffs legal tender but merely "transferred some book entries." (Compl., ¶ 10). Springing from the premise that checks written on credit are not legal tender, the plaintiffs assert that the defendants, individually and collectively: (1) breached their contractual agreement; (2) engaged in wire and mail fraud "to collect this unlawful debt"; (3) violated state usury laws; and (4) violated the plaintiffs' civil rights.

The plaintiffs' claims are not entirely novel. In *Nixon v. Individual Head of St. Joseph Mortg. Co.,* 615 F.Supp. 898 (D.C.Ind. 1985), *affirmed without opinion,* 792 F.2d 142 (7th Cir.1986), the plaintiff sued the defendant mortgage company for breach of contract, fraud, usury, and racketeering because the mortgage company "did not have 'legal money' (i.e., gold and silver coin) on deposit to back up the loan, but instead had only 'credit and checkbook money'—a bookeeping entry for the loan—which cannot be legal tender." *Id.* at 899. Similarly, in *Thiel v. First Federal Sav. & Loan Ass'n,* 646 F.Supp. 592 (N.D.Ind.1986), *dismissed & aff'd. in part without opinion,* 828 F.2d 21 (7th Cir.1987), the plaintiffs raised racketeering claims because the defendant Savings and Loan provided them with a loan in the form of a check without having "money in the form of legal tender actually chang[e]

hands." *Id.* at 595. In both cases the plaintiffs were not only denied their claims, but were also sanctioned for filing frivolous lawsuits. *Nixon,* 615 F.Supp. at 901; *Thiel,* 646 F.Supp. at 598. Here, the plaintiffs' claims fail for similar reasons stated by the Courts in *Nixon* and *Thiel.*

First, there is no requirement that a loan must be made with legal tender before a court will deem it valid. *See Nixon,* 615 F.Supp. at 900. In fact, "[w]hile dollar bills and coins have been declared by Congress as legal tender, see 31 U.S.C. § 5103, and so can be used to pay any debt, not all debts need be paid in legal tender if the parties agree." *Id.* In this case, Citibank properly issued a check to the plaintiffs as a loan, secured by a mortgage. As demonstrated by their acceptance of the benefits of this transaction, the plaintiffs agreed to Citibank's use a negotiable instrument instead of legal tender. *See Thiel,* 646 F.Supp. at 596 (finding that by accepting the benefits of the loan, the plaintiffs agreed to the use of negotiable instrument).

Second, the plaintiffs do not complain that they did not reap the benefits of using this check as a negotiable instrument. Nor do they complain of not being able to access actual "legal tender" by cashing the check. Instead their complaint is that there were inadequate funds in the Citibank vault, so that the check drawn to them was "not backed by" legal tender. (Compl., ¶ 8). However, whether or not there were adequate funds in Citibank's possession is irrelevant. The loan properly served the purpose of providing the plaintiffs with the funds they needed. *Nixon,* 615 F.Supp. at 900 (finding that although there were inadequate funds to back up the check issued to plaintiff, the check still had the same effect as legal tender because it enabled the plaintiff to purchase his home). Apparently, the plaintiffs have "enjoyed the fruits of what [Citibank's] check bought, yet [they] seek to nullify that check on the basis of [a] ... view that bank or mortgage company checks are worthless attempts to create illegal tender." *Id.* at 901 (internal quotations omitted). Furthermore, it was only after they defaulted and foreclosure proceedings were completed, that plain-

tiffs came forward with their theory attacking the mortgage on this basis. *Thiel,* 646 F.Supp. at 596.

Since all the causes of action stem from the plaintiffs' premise that the check issued by Citibank was an attempt by the bank to create illegal tender, the defendants' motions to dismiss for failure to state a claim are granted, and the plaintiffs' Complaint is dismissed its entirety.

Finally, since the Court has already dismissed the Complaint on two separate grounds, there is no need to address the defendants' remaining grounds for dismissal.

## III. CONCLUSION

Having reviewed the parties' submissions, and for the reasons stated above, it is hereby

**ORDERED,** that the motion to dismiss the Complaint is granted; and it is further

**ORDERED,** that the Complaint is dismissed in its entirety and the Clerk of the Court is directed to close this case.

**SO ORDERED.**