**Affirmed and Memorandum Opinion filed August 10, 2023**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00522-CV

### JOSE JUAN MALDONADO, Appellant

### V.

### YELLOWFIN LOAN SERVICING CORP., AS THE SUCCESSOR IN INTEREST TO SUMMIT MORTGAGE CORPORATION, Appellee

**On Appeal from the County Court at Law No. 2
Tarrant County, Texas
Trial Court Cause No. 2020-004152-2**

## MEMORANDUM OPINION

This appeal stems from a promissory note made by appellant, Jose Juan Maldonado, in favor of Summit Mortgage Corporation (Summit) and now held by appellee Yellowfin Loan Servicing Corp. (Yellowfin). Yellowfin sued appellant for breach of promissory note. The trial court granted Yellowfin's hybrid motion for summary judgment. Because Yellowfin conclusively established the required elements to recover on a promissory note, we affirm.

## *Background*

On January 27, 2006, appellant executed and delivered a promissory note (the Note) in favor of Summit to obtain a mortgage loan in the amount of $27,771, at a per annum interest rate of 9.875%. Summit retained the right to transfer the Note, and "anyone who [took] possession of the Note . . . [would] be called the 'Note Holder.'" Beginning March 1, 2006, appellant agreed to pay a monthly installment of $241.15, including interest and other charges, until the Note was satisfied. On February 1, 2021, appellant acknowledged that he would make one balloon payment of any outstanding balance remaining under the Note. In the event of a default, the Note contained an acceleration clause, and attached to the Note were two alonges. The first allonge transferred the Note to RCS Recovery Services, LLC, and the second allonge transferred the Note to Yellowfin.

On July 13, 2020, Yellowfin sued appellant for breach of promissory note. According to Yellowfin's petition, Yellowfin is the current owner and holder of the Note. Yellowfin sent a letter to appellant notifying him of the assignment of the Note. At some point after the notice of assignment, appellant defaulted on the Note by failing to pay the monthly installments or balloon payment as required. Subsequently, Yellowfin sent a notice of acceleration to appellant and informed him of his right to cure the default within thirty days. After appellant failed to cure the default, Yellowfin accelerated all payments and alleged that $23,614.30 remained due on the Note. On August 3, 2020, appellant submitted a letter to the trial court, which amounted to a general denial, alleging, among other things, that (1) he "operate[s] under the laws of the Republic"; he is the "beneficiary of the named estate living upon the land in the Republic; and (3) Yellowfin failed to state a claim against him because he is "a living person who is the beneficiary of this estate."

On March 14, 2022, Yellowfin filed its combined traditional summary

2

judgment motion and no-evidence summary judgment motion alleging that it was seeking "only unpaid principal due," and the Note was properly accelerated. On May 5, 2022, appellant submitted an affidavit presumably in response to Yellowfin's combined summary judgment motions. Appellant's affidavit was wholly nonsensical, but we interpret his affidavit to challenge a lender's ability to lend money rather than credit. His affidavit contained a "conditional acceptance of debt" and requested "proof of claim of any debt [he was] liable for." Appellant also requested, among other things: (1) "[a] certified copy of the alleged Lenders' balance sheet and (Federal Reserve form ) FR2046"; (2) "[t]he IRS form 1099 OID relating to this transaction"; (3) "[t]he canceled check or draft showing the asset transfer into the account that funded the alleged 'loan'"; (4) "[a]n affidavit from the party having first hand [sic] knowledge that lawful money was advanced on behalf of [appellant] and not credit in the form of unlawful bills . . . or non-redeemable privately issued promissory notes"; (5) "[a]n affidavit from a party having first hand [sic] knowledge swearing that [Summit and Yellowfin] suffered a loss when [appellant] did not repay the alleged money advanced" on his behalf; and (6) "the lawful authority [Summit and Yellowfin] . . . operated under to loan anything other than gold or silver coin and create a debt obligation."

On June 6, 2022, the trial court conducted a hearing on Yellowfin's combined summary judgment motions, and the trial court granted Yellowfin's summary judgment motions. On June 6, 2022, the trial court signed a final judgment awarding Yellowfin a judgment against appellant for $23,614.30 as the principal balance owed under the Note, $3,000 in reasonable and necessary attorney's fees, costs of court, and post-judgment interest at the contractual rate of 5% per annum.

## Discussion

We review a summary judgment de novo. *Mann Frankfort Stein & Lipp*

*Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Wyly v. Integrity Ins. Sol.*, 502 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2016, no pet.). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *see also Fielding*, 289 S.W.3d at 848. When, as here, the trial court did not specify the exact basis for its ruling, we must affirm the "summary judgment if any of the grounds asserted are meritorious." *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). In our review, we are restricted to considering the arguments the nonmovant presented to the trial court in its written motion or response. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993).

To prevail on a no-evidence summary judgment, the movant must allege that no evidence exists to support one or more essential elements of a claim for which the nonmovant bears the burden of proof at trial. *See PAS, Inc. v. Engel*, 350 S.W.3d 602, 607 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing Tex. R. Civ. P. 166a(i)); *Kane v. Cameron Int'l Corp.*, 331 S.W.3d 145, 147 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The nonmovant must then present evidence raising a genuine issue of material fact on the challenged elements. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d, 306, 310 (Tex. 2009). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018); *see also Fielding*, 289 S.W.3d at 848 (citing Tex. R. Civ. P. 166a(c)). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Centeq Realty,*

*Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

On appeal, appellant raises four issues. As presented, we interpret appellant's issues to assert: (1) Yellowfin's presentment of the Note as evidence was insufficient; (2) the trial court improperly excluded his argument and testimony regarding the "Professional Background Qualification of an Attorney and Legal Officer for Legal Departments of the Federal Reserve Bank of New York and Cleveland"; (3) the contract is *ultra vires* because a national bank can only lend money (not credit); and (4) the trial court erred in failing to issue a Racketeer Influenced and Corrupt Organizations (RICO) subpoena for "unsubstantiated claims of obligation."[1]

In response, Yellowfin contends that appellant's issues are "variants of 'vapor money' arguments that have been repeatedly dismissed by courts across the country." Prior to the discussion of the merits of appellant's appeal, the Court first addresses Yellowfin's argument that appellant's underlying theory appears to be related to the "vapor money" theory that derives from the sovereign citizen movement.[2]

The "vapor money" theory was described by the United States District Court for the Southern District of Ohio in *Demmler v. Bank One NA*:

> Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He contends that [the lender] took his "money," i.e., the promissory note, deposited it into its own account without his permission, listed it as an "asset" on its ledger entries, and

---

[1] The court is mindful that appellant is a pro se litigant. We construe liberally pro se pleadings and briefs; however, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978).

[2] "[S]overeign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate citizens' behavior." *United States v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013).

then essentially lent his own money back to him. He contends that [the lender] . . . "created" the money through its bookkeeping procedures.

No. 2:05-CV-322, 2006 WL 640499, at *3–4 (S.D. Ohio Mar.9, 2006).

The "vapor money" theory refers back to 1933 when the United States discarded the gold standard, which, according to the theory, resulted in the federal government's bankruptcy, *Goodwin v. Flagstar Bank*, No. 1:19–cv–859, 2019 WL 7582866, at *3 (W.D. Mich. Dec. 23, 2019); *see also Johnson v. Deutsche Bank Nat'l Tr. Co.*, No. 09-21246-CIV, 2009 WL 2575703, at *1 (S.D. Fla. June 30, 2009), after which "lenders have been creating unenforceable debts because they are lending credit rather than legal tender." *Goodwin*, 2019 WL 7582866, at *3. Accordingly, pursuant to the "vapor money" theory, a loan imposes no repayment obligation on the recipient if the indebtedness was funded with credit as opposed to hard currency. *See Rodriguez v. Countrywide Home Loans, Inc.*, No. 08–23119–CIV, 2008 WL 8980452, at *2 (S.D. Fla. Dec. 29, 2008) (noting the vapor money theory holds that payments for economic obligations cannot be made by promissory note or other similar instruments as they are illegal and do not create a legally cognizable debt.) "The essence of the 'vapor money' theory is that the promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (D. Conn. 2010).

As Yellowfin notes, federal courts have uniformly rejected the "vapor money" theory and similar arguments. *See McLehan v. Mortg. Elec. Registration Sys.*, No. 08-12565, 2009 WL 1542929, at *2 (E.D. Mich. June 2, 2009) ("The vapor money theory . . . and 'similar arguments have been rejected by federal courts across the country.'"); *Demmler*, 2006 WL 640499, at *1, 3–4 (determining that the no money lent theory pleaded in the case was "utterly frivolous and lacks any legal foundation

6

whatsoever," and that "this patently ludicrous argument . . . ha[s] been rejected by federal courts across the country"); *Frances Kenny Family Tr. v. World Sav. Bank FSB*, No. C04-03724 WHA, 2005 WL 106792, at *5–6, (N.D. Cal. Jan. 19, 2005) (awarding attorney fees against the plaintiffs and their attorneys for "abuse of the judicial process" despite the plaintiffs' voluntary dismissal of the complaints); *Rene v. Citibank NA*, 32 F. Supp. 2d 539, 544–45 (E.D.N.Y. 1999) (rejecting claims that because lender did not have an amount equal to the face value of the loan in its vault, and merely "transferred some book entries," lender had created illegal tender); *Nixon v. Individual Head of St. Joseph Mort. Co.*, 615 F. Supp. 898, 899–900 (N.D. Ind. 1985) (dismissing claims of breach of contract, fraud, usury, "illegality," unjust enrichment, and racketeering, stating that plaintiff's "unlawful money" allegations were "absurd," and that "[p]rivate parties may enter into transactions to trade whatever they agree on as having equal value," so that a loan transaction is not invalid merely because "credit" is issued); *see also Alcorn v. Washington Mut. Bank, F.A.*, 111 S.W.3d 264, 266 (Tex. App.—Texarkana 2003, no pet.) (stating that the "vapor money" theory is a legally erroneous concept apparently based on the misinterpretation of a publication of the Federal Reserve System).

This Court likewise rejects appellant's claims rooted in the "vapor money" theory because this theory has no basis in law. *See, e.g.*, *Winsey v. Nationstar Mortg., LLC*, No. 8:17-cv-979-T-33AEP, 2017 WL 2812700, at *4 (M.D. Fla. June 29, 2017) (dismissing money vapor claims as "utterly meritless"); *Sanford v. Robins Fed. Credit Union*, No. 5:12-CV-306, 2012 WL 5875712, at *3–4 (M.D. Ga. Nov. 20, 2012) (quoting case law denoting the vapor money theory as "equal parts revisionist legal history and conspiracy theory" and dismissing the plaintiff's complaint for failing to state an actionable claim); *Johnson*, 2009 WL 2575703, at *3 (finding complaint based on vapor money theory "lacks legal merit and should

be dismissed"); *Carrington v. Fed. Nat'l Mortg. Assoc.*, No. 05-73429, 2005 WL 3216226, at *2 (E.D. Mich. 2005) (recognizing that vapor money theory has been "universally rejected by numerous federal courts.").

As in the typical "vapor money" claim, appellant alleges that Summit issued an invalid loan because the loan was backed by credit and not lawful money. Appellant further posits that, by failing to provide "verified copies and or 'originals' of the required documents," Summit and Yellowfin acquiesced that he was no longer indebted to either corporation. However, appellant has provided no substantive basis in the law to demonstrate that he is not indebted with respect to the Note or that the Note has been otherwise satisfied.

The record reflects that appellant signed the Note, which provided that:

> In return for a loan that I have received, I promise to pay U.S. $27,771 (this amount will be called the "principal"), plus interest, to the order of the Lender. The Lender is [Summit]. I understand that the Lender may transfer this Note. The Lender who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder." I will pay interest at a yearly rate of 9.875%. . . . I will pay principal and interest by making payments each month of U.S. $241.15. I will make my payments on the 1st day of each month beginning on March 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges . . . that I may owe under this Note. If, on February 1, 2021, I still owe amounts under this Note, I will pay all those amounts, in full, on that date.

Likewise, appellant has provided no substantive basis in the law to support *ultra vires* claims against Yellowfin. An *ultra vires* action is one in which the plaintiff seeks relief in an official-capacity suit against a government actor who allegedly has violated statutory or constitutional provisions by acting without legal authority or by failing to perform a purely ministerial act. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009). There is no evidence on the record

8

before us that Yellowfin is a government actor. Similarly, appellant's claims that the trial court erred in not "issuing a subpoena for unsubstantiated claims of obligations" in violation of RICO is wholly without merit and not dispositive in determining whether Yellowfin established the required elements to recover on a promissory note.

On the record before us, appellant did not dispute (1) signing the Note, (2) that Yellowfin is the current holder and owner of the Note, or (3) that the Note was secured by a mortgage, deed of trust, or similar security instrument. Thus, appellant has implicitly agreed that Yellowfin may use negotiable instruments to secure the mortgage debt and has assented to this arrangement since 2006 by paying the mortgage debt and enjoying the benefit of the property. Having concluded that appellant's complaints are rooted in the "vapor money" theory and lack legal merit, we need only determine if Yellowfin carried its burden in either its no-evidence summary judgment or traditional summary judgment motions.

When a person executes a promissory note, the note constitutes a written promise by the maker to pay the amount specified in the note to the payee named in the note. Tex. Bus. Com. Code § 3.104(a), (b); *Texmarc Conveyor Co. v. Arts*, 857 S.W.2d 743, 746 (Tex. App.—Houston [14th Dist.] 1993, writ denied). To recover on a promissory note, the plaintiff must prove: (1) the note in question; (2) the party sued signed the note; (3) the plaintiff is the owner or holder of the note, and (4) a certain balance is due and owing on the note. *Dorsett v. Hispanic Housing & Educ. Corp.*, 389 S.W.3d 609, 613 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Blankenship v. Robins*, 899 S.W.2d 236, 238 (Tex. App.—Houston [14th Dist.] 1994, no writ).

There is undisputed evidence that appellant executed the Note on January 27,

2006, as evidenced by his signature. Yellowfin presented a true and correct copy of the Note proving ownership and possession of the instrument and established its status as the owner and holder of the note. *See Life Ins. Co. of Va. v. Gar-Dal, Inc.*, 570 S.W.2d 378, 380 (Tex. 1978). Yellowfin also presented evidence of the balance owed on the Note. Appellant failed to present any evidence controverting the evidence, and the documents requested by appellant were wholly irrelevant to any material issue in this case because they relate only to a "completely spurious and legally incorrect claim." *See Alcorn*, 111 S.W.3d at 267. Thus, Yellowfin conclusively established the required elements to recover on a promissory note. *See Dorsett*, 389 S.W.3d at 613.

Accordingly, we overrule each of appellant's issues on appeal.

### *Conclusion*

We affirm the judgment of the trial court.

/s/ Frances Bourliot
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.

10