**George THIEL, et al., Plaintiffs,**

**v.**

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF MARION, et al., Defendants.**

**Civ. No. F 85–409.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Nov. 4, 1986.

George Thiel, pro se.

Alan VerPlanck, Barrett & McNagny, Fort Wayne, Ind., for defendants.

ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendants' motion for summary judgment. Defendants originally filed a motion to dismiss on December 30, 1985. Following the third hearing on this motion, held on March 20, 1986, the court deferred ruling on the motion to dismiss in anticipation of the filing of motions for summary judgment. Defendants filed a motion for summary judgment on June 19, 1986. It has now been fully briefed, and the court fully apprised of the positions of the parties. The court will consider defendants' motion to dismiss to be merged with their motion for summary judgment. For the reasons which follow, defendants' motion for summary judgment will be granted. In addition, this case presents a situation where sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure are appropriate.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985). The non-moving party's reasonable allegations are to be accepted as true for purposes of summary judgment. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218–19 (7th Cir.1984). A party may not rest on the mere allegations of the pleadings or the bare contention that an issue of fact exists. *Posey v. Skyline*

*Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Atchison, Topeka & Santa Fe Railway Co. v. United Transportation Union*, 734 F.2d 317 (7th Cir.1984); *Korf v. Ball State University*, 726 F.2d 1222 (7th Cir.1984). *See generally* C. Wright, *Law of Federal Courts*, § 99 (4th ed. 1983); 6 *Moore's Federal Practice*, § 56.15 (2d ed. 1984).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips*, 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Assn.*, 693 F.2d 636, 639 (7th Cir.1982). *See also Bishop v. Wood*, 426 U.S. 341, 348, 348 n. 11, 96 S.Ct. 2074, 2079, 2079 n. 11, 48 L.Ed.2d 684 (1976).

## I. Factual Background

The events which gave rise to this suit began with a mortgage loan granted by defendant First Federal Savings and Loan Association of Marion (Savings and Loan) to plaintiff Mary Ukasick (Ukasick) and Anthony J. Pacelli (Pacelli) on September 22, 1983. On October 12, 1984, Savings and Loan notified Ukasick and Pacelli that they were in default for failing to maintain insurance on the financed properties. The Savings and Loan purchased insurance. Ukasick and Pacelli were notified they were in arrears on November 21, 1984.

When the delinquency remained unpaid, the Savings and Loan brought foreclosure proceedings on June 7, 1985 against Ukasick and Pacelli in the Grant County Superior Court. Rather than answer the complaint, defendants, acting *pro se*, filed their own "complaint at law." They alleged that they were defrauded into believing that the Savings and Loan had loaned them money (i.e., legal tender), when the transaction

really involved nothing more than a mere bookkeeping entry.

The Grant County Superior Court dismissed the "complaint at law" on August 8, 1985. The Savings and Loan's subsequent motion for summary judgment was granted on September 13, 1985. On September 26, 1985, David O'Neal (plaintiff herein) sought leave to intervene in the foreclosure, claiming an equitable interest in one of the properties subject to foreclosure. Ukasick's motion to correct errors, filed on October 3, 1985, was set for hearing on November 1, 1985. She failed to appear at that hearing, and the court denied her motion.

## II. Statement of the Case

The instant action, arising out of the same factual context, was filed in this court on October 3, 1985. Plaintiffs include Ukasick, O'Neal, and George Thiel (Thiel), a self-styled "paralegal" who primarily has been responsible for presenting this *pro se* action. Thiel rents living space in one of the residences subject to the foreclosure action in Grant County Superior Court.

It is noteworthy that Thiel does not resemble the typical *pro se* litigant. While he stated in his deposition that he has had no formal education beyond high school, he claims to have done work for attorneys in nine states. He says that he is a recognized expert in criminal tax law. A review of the complaint in this matter confirms that Thiel has more than a passing knowledge of the drafting of pleadings.

The complaint names as defendants the Savings and Loan; Gordon Coryea, its attorney; Stephen L. Smithley, its agent; Judge Gary Thompson of the Grant Superior Court; and James Westfall, the receiver appointed by Judge Thompson in the foreclosure action.

In addition to these named parties, the complaint also purports to be a class action on behalf of all those similarly situated to the plaintiffs. Finally, it names as further defendants "John Does 1–50 and Jane Roes 1–50."

The complaint is a more thorough development of the theory advanced by Ukasick and Pacelli in the foreclosure action. It alleges seven separate counts in its sixteen pages. The complaint's jurisdictional statement indicates that the First, Third, and Seventh Counts arise under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (RICO). The Fourth Count invokes selected provisions of the National Bank Act, 12 U.S.C. §§ 85 and 86. While not indicated in the jurisdictional statement, the Second Count also appears to be premised on a RICO violation. The Fifth and Sixth Counts are presumably state causes of action, entitled respectively "Contract Rescission" and "Quiet Title."

## III. Discussion

Plaintiffs are proceeding *pro se. Pro se* pleadings are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The district court's role is to ensure that the claims of *pro se* litigants are given "fair and meaningful consideration." *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir.1984); *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir. 1982). This court also recognizes that federal courts have historically exercised great tolerance to ensure that an impartial forum remains available to plaintiffs invoking the jurisdiction of the court without the guidance of trained counsel. *Pro se* motions and complaints such as the plaintiffs' are held to less stringent pleading requirements; rigor in the examination of such motions, complaints and pleadings is inappropriate.

The court in this case has endeavored to follow the spirit and letter of the Supreme Court's mandate in *Haines, supra,* regarding *pro se* pleadings. It has come to the conclusion, however, that the complaint is totally without legal foundation, and, indeed, warrants sanctions pursuant to Rule 11.

It would be a further waste of judicial resources to detail the specific allegations of the voluminous complaint at length. Rather, the court believes at this point,

following three hearings and a careful review of plaintiff Thiel's deposition, that it can summarize adequately the gist of plaintiffs' complaint.

Plaintiffs, apparently guided by the economic theories of Thiel, paint the following scenario: when the Savings and Loan approved the loan to Ukasick and Pacelli, it provided the proceeds of the loan by way of checks drawn on its credit. The checks passed through Ukasick and Pacelli to the seller of the real estate and his mortgagee, but no money in the form of legal tender actually changed hands. The pay-off for the Savings and Loan came when it collected monthly payments from Ukasick and Pacelli in cash and received a money judgment when it foreclosed on the mortgage. Plaintiffs acknowledge that this method of doing business is a common practice in the banking industry; the practice condemned in the complaint is national in scope.

Distilling plaintiffs' theory of the case as set out above has not been an easy process. In attempting to accommodate plaintiffs' *pro se* status, the court conducted hearings in this case on January 2, 1986, February 4, 1986, and March 20, 1986. Plaintiff Thiel, speaking on behalf of all plaintiffs at these hearings, was unable to articulate clearly this theory, claiming each time that the proof he needed could only result from extended discovery of the Savings and Loan's financial records. The Savings and Loan moved for a protective order regarding these extensive requests which the court provisionally granted subject to plaintiffs' showing why they needed such extended materials to adequately address the threshold legal issues raised in defendants' motion to dismiss. No such showing was ever made. Ultimately, however, the Savings and Loan provided most of the information sought by plaintiffs in an effort to move the case along.

At this point, defendants' motion for summary judgment has been fully briefed, and all evidence relevant to the issues raised in this motion is before the court. It is doubtful that any evidence beyond the original Ukasick/Pacelli note and mortgage could be helpful in this case. Certainly, the additional materials now in evidence, including records that have no relation to the dispositive issues, are more than adequate to resolve this case.

There are several grounds on which defendants' motion for summary judgment may be granted. For the sake of economy, however, this court will dwell on only the most obvious. Plaintiffs Thiel and O'Neal have no standing to bring this suit because they have no legal connection with the mortgage loan between the Savings and Loan, and Ukasick and Pacelli. They may believe that they, as members of society unjustly victimized by a fraudulent banking system, have as much standing to bring this system to its knees as anyone else. The basis of the complaint, however, in contrast to their metaphysical economic theories, refers to events surrounding a specific transaction with which they have no connection whatsoever. Whatever incidental connection they may have to the properties on which the Savings and Loan foreclosed, Thiel and O'Neal have failed to allege a personal stake in the outcome of this litigation. As a result, they have no standing. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Plaintiff Ukasick similarly lacks standing in this case because the averments of the complaint, while premised on facially different theories, are the same as those raised in her "complaint at law" filed in response to the Savings and Loan's mortgage foreclosure action in Grant County Superior Court. As noted earlier, this complaint was dismissed and the foreclosure granted. Consequently, the doctrine of res judicata applies. Ukasick cannot relitigate issues that were or might have been determined in the prior foreclosure proceeding. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

Beyond these fundamental tenets of civil procedure, it is also clear that plaintiffs' complaint and the evidence before the court fail to raise a genuine issue of material fact as to whether a violation of the federal

statutes cited in the complaint have been violated. Section 1962 of RICO is violated "by any person associated with an enterprise, the activities of which affect commerce, who conducts the enterprise's affairs through a pattern of racketeering activity." *Illinois Dept. of Revenue v. Phillips*, 771 F.2d 312, 313 (7th Cir.1985). The evidence in this case shows no conduct which qualifies as racketeering activity as defined in the statute, 18 U.S.C. § 1961(1). Rather, the evidence suggests no more than a typical note and mortgage executed between the Savings and Loan, and Ukasick and Pacelli.

Plaintiffs also allege violations of the National Bank Act, 12 U.S.C. §§ 85 and 86. These sections set forth a prohibition against charging excessive interest and define the penalties for violating this prohibition. Leaving aside the question whether a savings and loan institution is subject to this statute, plaintiffs have presented no evidence that the interest charged in the note at issue violated the terms of the statute beyond mere assertions in their complaint. Thus, they have failed to show that the statute has any application to this case.

Reasoning on the most fundamental level, a level which requires more common sense than legal acumen, plaintiffs' theory is absurd. A check issued by a mortgagee need not be "legal tender" for the loan to be valid. Far from suggesting any fraudulent conduct, the drafts issued by the Savings and Loan in this case accomplished the only conceivable purpose of the transaction: they allowed Ukasick to buy the properties at issue. The court has not been made aware of any lawsuit or other legal detriment suffered by plaintiffs at the hands of the sellers of the properties for anyone's involvement in, as Thiel characterizes it, this "gigantic check kiting scheme." Thiel Dep. at 47. Thus, while dollar bills and coins have been declared by Congress as legal tender, *see* 31 U.S.C. § 5103, and so can be used to pay any debt, not all debts need be paid in legal tender if the parties agree. *See Nixon v. Individual*

*Head of the St. Joseph Mortgage Co.*, 615 F.Supp. 898, 900 (N.D.Ind.1985).

In this transaction, all parties, including plaintiffs as demonstrated by their acceptance of the benefits of the transaction, agreed that the Savings and Loan could use its negotiable instruments rather than legal tender. Only after foreclosure proceedings had been commenced did plaintiffs come forward with their improbable theory. The timing of this suit does nothing to bolster their credibility.

Having eliminated any substantive basis for the federal claims raised in the complaint, the state claims must also fail. Once federal causes of action have been shown to be improperly before the court, pendent state claims cannot remain by themselves. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### IV. Rule 11 Sanctions

Rule 11 of the Federal Rules of Civil Procedure governs the signing of pleadings and motions, and requires that each pleading or motion be signed by an attorney or the party (if the party is proceeding *pro se*). The rule then provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading violates this rule, the court "shall impose" an "appropriate sanction," which may include the amount of reasonable expenses and attorney's fees incurred by the other party because of the filing of the pleading or motion.

The notes of the Advisory Committee on the Federal Rules make it clear that Rule 11's provisions are designed to "discourage dilatory or abusive tactics and [to]

help streamline the litigation process by lessening frivolous claims or defenses." The rule applies to anyone who signs a pleading, motion, or other paper, and the same standards apply to *pro se* litigants, although the concerns of *Haines v. Kerner, supra,* can be taken into account.

The core of Rule 11 is that the signature on the pleading certifies that "to the best of his knowledge, information and belief *formed after reasonable inquiry* it [the pleading, motion, or other paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law ..." (emphasis added). What is important to note is that this language requires more than just a belief that the law is or should be a certain way; as the Advisory Committee states, "what constitutes a reasonable inquiry may depend on ... whether the pleading, motion, or other paper was based on a plausible view of the law," and is thus a "more stringent" standard than good faith. *See Hilgeford v. Peoples Bank, Portland, Indiana,* 607 F.Supp. 536, 539 (N.D.Ind.1985).

In this case, plaintiffs are obviously concerned with what they see as an unjust system of commercial transactions, typified by the mortgage loan granted to Ukasick and Pacelli by the Savings and Loan. It is equally true that they along with all other Americans are free to hold whatever economic or political views they so choose. With this freedom, however, comes the responsibility to express these views appropriately. It is difficult to imagine a more irresponsible forum for the plaintiffs to express their particular economic views than this court. Courts are in the business of resolving genuine disputes that have a direct and substantial impact on the parties involved in them. This business is more pressing now than it has ever been, and the court can ill afford to waste its scarce resources on those who abuse their access to it. Needless to say, the defendants have also been put to considerable time and expense through their involvement in this case.

The use of Rule 11 sanctions as a means to discourage frivolous litigation has been supported strongly and unequivocally by the Seventh Circuit. In *Dreis & Krump Manufacturing Co. v. Int'l. Assn. of Machinists and Aerospace Workers, District No. 8,* 802 F.2d 247, 255–256 (7th Cir.1986), the court stated:

> Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts. The rules, whether statutory or judge-made, designed to discourage groundless litigation are being and will continue to be enforced in this circuit to the hilt—as a recital of opinions published by this court since the first of the year imposing sanctions for groundless litigation should make clear. *See Bacon v. American Federation of State, County, and Municipal Employees Council # 1,* 795 F.2d 33 (7th Cir.1986); *Granado v. Commissioner,* 792 F.2d 91, 94 (7th Cir.1986) (per curiam); *Coleman v. Commissioner,* 791 F.2d 68 (7th Cir.1986); *Spiegel v. Continental Ill. Nat'l Bank,* 790 F.2d 638, 650–51 (7th Cir.1986); *Thornton v. Wahl,* 787 F.2d 1151 (7th Cir.1986); *Cannon v. Loyola University,* 784 F.2d 777, 782 (7th Cir.1986); *Wisconsin v. Glick,* 782 F.2d 670 (7th Cir. 1986).

It does not require a trained lawyer to recognize that the allegations raised by plaintiffs in their complaint cannot support a cause of action for violation of the statutes cited therein. Plaintiffs apparently operate under the illusion that their own vision of an appropriate monetary system that operates solely on legal tender transactions is sufficient to support their claims in this suit. If the imposition of sanctions represents a rude awakening in this regard, then so be it. Such sanctions should come as no surprise to plaintiffs, since the court explicitly warned them of this possibility. At the hearing conducted in this case on January 2, 1986, the court stated:

I've had some other cases of this general nature come into the court. They have been different than this one in some significant respect, but in those instances where I have determined that the case was clearly without merit, I have awarded fees and other sanctions, and I want you to be aware of that.

I'll give you a couple of citations of cases that you can refer to. One is a decision of mine in *Hilgeford v. Peoples Bank of Portland, Indiana.* That case can be found at 607 F.Supp. 356 [536]. The Court of Appeals affirmed my decision at 776 F.2d 176.

And another case is *Nixon v. Individual Head of St. Joseph Mortgage Company,* my decision reported in 612 F.Supp. 253.

Tr. 24–25.

Thiel demonstrated his understanding of the court's warnings by giving his thoughts on *Nixon* in his deposition:

[W]ell, you know the *Nixon* case up there that Judge Lee cited, I didn't know this man at that time. The thing that I guess I got more disturbed about than anything was an individual going out and leaving the bad case law for my lawyers to follow up. I don't want to sound like a snob because I don't think I am but I can take a case like the *Nixon* case and it never would have gone to court because it was foolish ...

Thiel Dep. at 11. Thus, despite his *pro se* status, Thiel, as the spokesperson for plaintiffs, at least has demonstrated his ability to find a case and appreciate its significance. Unfortunately for all those involved in the instant suit, plaintiffs refused to take the final step and abandon a cause of action that obviously has abused the judicial system at least as much as the cases brought to their attention in which Rule 11 sanctions were imposed.

Consequently, the court finds appropriate the imposition of sanctions pursuant to Rule 11 on the plaintiffs, jointly and severally, for the time and effort put into this case by both the court and the defendants. A formula for setting a value on the court's time that has been used by this court in past cases is set forth in Levin and Colliers, *Containing the Cost of Litigation,* 37 Rutgers L.Rev. 219, 226–27 (1985) (each hour spent on case by federal judge costs government $600). *See Robinson v. Moses,* 644 F.Supp. 975, 982 (N.D.Ind.1986); *Dominguez v. Figel,* 626 F.Supp. 368, 374 (N.D.Ind.1986). A conservative estimate of the court's time devoted to this matter, including three hearings, a review of all pleadings, and the drafting of this order, is six hours. Using the formula set forth above, the court finds that Rule 11 sanctions in the amount of $3,600 for the court's time are appropriate, said fine to be payable within thirty (30) days of this order.

In addition, plaintiffs are ordered to pay the reasonable attorneys fees and costs incurred by the defendants in defending this cause as a further Rule 11 sanction. This amount will be determined by the court.

## V. Conclusion

Therefore, for all of the foregoing reasons, defendants' motion for summary judgment is GRANTED. In addition, plaintiffs, jointly and severally, are ORDERED to pay as a sanction pursuant to Rule 11 the amount of Three Thousand Six Hundred Dollars ($3,600.00), said amount to be payable to the clerk of the court within thirty (30) days from the date of this order. Plaintiffs, jointly and severally, are FURTHER ORDERED to pay Rule 11 sanctions, for the reasonable attorneys fees and costs incurred by the defendants herein in an amount to be determined by the court. In this regard, defendants are hereby GRANTED ten (10) days from the date of this order to file their detailed request for fees and costs.