UNITED STATES DISTRICT COURT 
 EASTERN DISTRICT OF LOUISIANA 

TAMMY KIDWELL, ET AL. CIVIL ACTION 

VERSUS NUMBER: 18-02052 

RUBY IV, L.L.C., ET AL. SECTION: "M"(5) 
 ORDER, REASONS, AND RECOMMENDATION 

 Before the Court are two motions for sanctions filed by Plaintiffs. (Rec. docs. 361, 
496). Defendants filed opposition memoranda to each (rec. docs. 369, 498) and Plaintiffs 
filed reply memoranda. (Rec. docs. 384, 501). Defendants also filed a “supplemental” 
opposition memorandum to the first of Plaintiffs’ motions. (Rec. doc. 377). 
 Having now closely reviewed these pleadings and the associated exhibits and having 
lived through the years-long fiasco that has been discovery in this matter, the Court rules on 
the Im. otionTs haes fFoilrlsotw Ms.o tion for Sanctions 
 Plaintiffs’ first motion seeks monetary and other sanctions against Defendants for a host 
of transgressions dating back to the earliest days of this litigation. It was filed after this Court 
issued an order granting as unopposed an earlier motion to compel filed by Plaintiffs. (Rec. 
doc. 332). In that order, dated March 4, 2020, the Court ordered Defendants to make a 
supplemental production they had previously (and repeatedly) agreed to make and further 
stated “Plaintiffs may brief the Court on the type and amount of sanctions that may be 
properly imposed iInd .this matter commensurate with the extent of Defendants’ compliance 
 1 
with this order.” ( ). 
 Defendants filed a motion to reconsider that order, arguing they had made an 
“inadvertent calendaring mistake, to their utmost chagrin” but that such mistake was not an 
indication of disrespect to the Court or their opponents. (Rec. doc. 333). After a telephonic 
hearing on that motion, the Court ordered Defendants – again – to produce the re-formatted 
b-50 reports they had previously agreed to produce no later than March 30, 2020. (Rec. doc. 
 2 
336). 
 The first pending motion for sanctions (the one contemplated by the Court’s 
aforementioned March 4, 2020 order), was filed by Plaintiffs on June 2, 2020. In it, Plaintiffs 
com•p lain of the following conduct, all of which they argue is sanctionable: 
 Attempting to “buy off” Plaintiff, Tammy Kidwell, by giving her an $868 check for 
 • “missing overtime hours” after this litigation had begun; 
 Failing three times to comply with this Court’s July 25, 2018 minute entry (rec. doc. 
 • 46); 
 Failing to timely search the emails of agreed-to custodians, omitting certain of those 
 custodians from their ultimate search, and omitting agreed-upon search terms from 
 • that search; 

 • Attempting to dissuade potential class members from joining the lawsuit; 
 Repeatedly avoiding properly noticed depositions of their principals by terminating 
 counsel and lying about the deponents’ whereabouts; and, 
1 
 The disputed production consisted of so-called “b-50” payroll reports in a particular format requested by 
 • 
 Failing to timely produce usable time-and-pay records. 
 (Rec. doc. 361). 
 Defendants responded to this motion by pointing out that most of the allegedly 

sanctionable conduct was unrelated to and predated the discovery skirmish concerning the 
b-50 reports and that many of the alleged transgressions occurred while Defendants were 
represented by one of their three prior law firms. (Rec. doc. 369). Specifically, counsel 
argued that, as to the format of production for the b-50 reports, counsel were unaware of 
any agreement by prior counsel to re-produce those reports in a different format and that 
they had since made such a production. ThusI, dt.hey claim the motion to compel that they 
failed to oppose was “arguably unnecessary.” ( ). 
 They go on to argue that the remaining instances of allegedly sanctionable conduct 

presented in Plaintiffs’ motion are not properly subject of a motion for sanctions because: 
they (1) do not relate to the motion to compel that precipitated the motion for sanctions, (2) 
occurred years earlier and involved prior counsel, (3) were subjeIdc.t of prior requests for 
sanctions that were denied, and/or (4) are not discovery related. ( ). 
 Plaintiffs filed a reply memorandum expressing disbelief that Defense counsel could 
argue they were unaware of Defendants’ prior agreements to re-produce the b-50 reports 
and explaining in some detail why that argument is not worthy of belief. (Rec. doc. 384). 
They go on to explain that the other transgressions pointed out in their motion should be 

grist for the mill in aI d“.totality-of-the-circumstances” consideration by the Court of Plaintiffs’ 
sanctions motion. ( ). 
 As noted above, the Court is all too familiar with the ridiculous procedural history of 
hearings and status conferences in this case than in any other single case since taking the 
bench. Considering the tortured history of the case and after thoroughly considering the 
briefing and exhibits associated with Plaintiffs’ first pending motion for sanctions, I find that 

the motion has merit and will grant it, albeit partially, for the following reasons and in the 
following particulars. 
 Federal Rule of Civil Procedure 37(a)(5) provides that, when a motion to compel is 
granted, the Court: 
 must, after giving an opportunity to be heard, require the party 
 or deponent whose conduct necessitated the motion, the party 
 or attorney advising that conduct, or both to pay the movant's 
 reasonable expenses incurred in making the motion, including 
 attorney's fees. But the court must not order this payment if: 
 (i) the movant filed the motion before attempting in good 
 faith to obtain the disclosure or discovery without court 
 action; 
 (ii) the opposing party's nondisclosure, response, or 
 objection was substantially justified; or 
 (iii) other circumstances make an award of expenses 
 unjust. 
 Fed. R. Civ. P. 37(a)(5)(A) 

 Here, the Court already determined that sanctions were warranted in its order of 
March 4, 2020, stating that Plaintiffs “may brief the Court on the type and amount of 
sanctions that may be properly imposed in this matter commensurate with the extent of 
Defendants’ compliance with this order.” (Rec. doc. 332). Notably, that order required 
compliance by March 23, 2020. As noted above, for various reasons, Defendants did not 
comply with that order until at least April 16, 2020. (Rec. doc. 361-1). 
 Defendants’ counsel’s protestations that there were unaware of any agreement 
between the parties concerning the production format of the b-50 reports is both 
unconvincing and not relevant to their clients’ obligations to conduct discovery in good faith. 
Importantly, Plaintiffs’ counsel had been explaining the nature of the agreement and asking 
for documents as far back as November of 2019; the Court itself discussed the matter 
repeatedly in status conferences with counsel for all parties. It is not credible for counsel to 

suggest in their clients’ defense that they were unaware of any such agreement – when they 
took over the case as Defendants’ fourth law firm they were charged with doing more than 
sticking their heads in the sand about their new clients’ extant discovery obligations and 
 3 
agreements. But that is exactly what they did. 
 The Defendants in this case have a documented history of taking extraordinary steps 
to avoid discovery, particularly depositions. As will be discussed below, for instance, the 
saga of Rule 30(b)(6) depositions in this case has been nothing short of depressing. Whether 
they are serially firing counsel, showing up unprepared for their depositions, sending 
unprepared employees to testify, or pretending not to understand the Courts’ orders or 
agreements their own counsel have made, the Defendants’ principals have seriously 
retarded the progress of this case. Their failure to produce the re-formatted b-50 reports as 
agreed (and ordered) was yet another example of their dilatory conduct. 
 For that very reason, the Court finds that Defendants should be sanctioned for failing 
to produce the documents in a timely fashion and for causing unnecessary motion practice, 
up to and including the pending first motion for sanctions. Their sanctionable conduct in 
this arena includes: (1) failing for months to produce the documents requested by Plaintiffs 

and agreed to by their counsel, thereby necessitating the filing of a motion to compel; (2) 
claiming not to have received the pre-motion correspondence sent by Plaintiffs’ counsel 

3 
addressing that failure when the record reveals they undoubtedly did receive that 
correspondence; (3) and failing (even if through neglect) to respond to that motion to 
compel, necessitating a round of motion practice aimed at having the Court reconsider its 

order granting that motion. 
 The Court further finds that the appropriate sanction for this discovery misconduct 
is an award of attorneys’ fees to Plaintiffs for the work associated with the filing of the 
(unopposed) motion to compel, their correspondence, and attendance at a status conference 
on Defendants’ motion for reconsideration, and the filing of the present first motion for 
sanctions. After thorough consideration of the nature and scope of these pleadings, the Court 
finds that an attorneys’ fee award in the amount of $6,000 is reasonable and appropriate and 
will order Defendants to remit such a payment to counsel for Plaintiffs no later than 

November 16, 2020. 
 Notably, this is the third time the Court has issued a monetary sanction against 
DefeIIn. dantsT. h Ael aSse,c iot nwdil lM nootti boen tfhoer lSaasnt. ctions

 Plaintiffs’ second motion for sanctions arises out of a recent (second) Rule 30(b)(6) 
deposition that the Court ordered to go forward on three topics. (Rec. doc. 456). In response 
to a motion to compel (rec. doc. 418) filed by Plaintiffs after Defendants’ corporate designee 
was unable to answer questions on three topics in the deposition notice (topics 3, 6, and 7), 

the Court ordered: 
 The Court finds that the corporate designee presented by 
 Defendants was unprepared to testify as a knowledgeable 
 witness pursuant to Rule 30(b)(6) as to topics 3, 6, and 7 of the 
 deposition notice. Defendants’ justifications for presenting a 
 witness woefully unprepared to testify on these topics ring 
 The Plaintiffs shall be allowed to reconvene the 30(b)(6) 
 deposition on topics 3, 6, and 7, to include inquiry into the 
 previous Department of Labor (“DOL”) investigation referenced 
 in Plaintiffs’ motion papers. Defendants may avoid this 
 deposition if they agree, no later than August 25, 2020 to 
 stipulate to: (1) the accuracy of the information in the DOL 
 findings and narrative reports, and (2) the admissIidb.ility of that 
 information and related documents at trial. 
 ( ). 

 In that order, the Court assessed a monetary sanction of $1,500 in attorneys’ fees for 
DefendantIsd’ .initial failure to present a witness with any capability of responding to topics 3, 
6, and 7. ( ). 
 Remarkably, Plaintiffs now call to the Courts’ attention that the individual designated 
for the second deposition ordered by the Court was, like the first, unprepared to testify about 
those topics because he had spoken to no one and reviewed no documents in advance of the 
deposition. (Rec. doc. 496-1). They attach deposition transcripts in which the deponent, 
Jhon•a than Abrego (“Abrego”), admitted to the following: 
 • He has worked for the Defendants since 2015. (Rec. doc. 496-4 at p. 7). 
 He has worked only as a restaurant general manIda.ger or assistant manager – never in 
 • management above a single-restaurant level . ( at pp. 5-7). 
 He spoke to no one with personal kIndo.wledge and reviewed no documents to prepare 
 • to testify about topics 3, 6, and 7. ( at pp. 7-8). 
 He could not provide testimony about any of the 30 compensation-related complaints 
 listed in Defendants’ interroIgda.tory responses (which were attached to the deposition 
 notice regarding topic 3). ( at pp. 9-15). 
 • 
 He could not testify concerning any of the prior wage-and-hour lawsuits filed against 
 the Defendants, which clearly fell within the scope of the deposition as ordered by the 
 Court. 

 Finally, Plaintiffs point out that Abrego testified completely at odds with the facts 
concerning the Department of Labor (“DOL”) findings in its prior investigations of 
Defendants’ companies. Plaintiffs point out that Abrego testified that the DOL had concluded 
that Defendants had not violated the Fair Labor Standards Act in any way, when it is clear 
from the DOL documents and findings that the Department found dozens of violations. (Rec. 
doc. 496-5). 
 In trying to fend off the inevitable, Defendants predictably plead innocent mistake and 
good faith. This is all more of the same – tiresome arguments in defense of the indefensible. 

Recalling that this deposition was conducted specifically pursuant to this Court’s order, here 
are Defendants’ justifications for ignoring that order. 
 First, they argue that a particular stipulation reached between the parties insulates 
Defendants from presenting a witness knowledgeable on the three aforementioned topics, 
notwithstanding a specific order directing Defendants to present a knowledgeable witness. 
This argument borders on farcical, considering that I already rejected that very argument in 
the order directing the deposition to proceed and Defendants failed to object to that order. 
(Rec. doc. 456). To be clear, if counsel thinks or hopes that a post-order stipulation relieves 

their client from complying with a court order, counsel should raise that argument with the 
Court before they decide to violate that order. This should be common sense. Here, though, 
Defendants persist in arguing that this stipulation has a much more far-reaching effect than 
 Whatever Defendants believe the effect of that stipulation should be, they cannot 
assume they are right and then proceed to violate an un-appealed discovery order, while just 
hoping for the best. 

 Next, Defendants suggest that their designee “did provide answers” to the relevant 
questions. (Rec. doc. 498 at p. 3). Well, I suppose “I don’t know” is technically an answer, 
but it hardly demonstrates compliance with Rule 30(b)(6) and my order that Defendants 
provide a knowledgeable witness. I have now been forced to review the entire transcript of 
Abrego’s testimony and it is perfectly clear he had no real idea what he was talking about 
when it came to the topics of this second deposition, which I must I assume is not his fault. 
He appears to be the latest sacrificial employee sent to the deposition room to say “I don’t 
 4 
know” over and over again. 
 Suffice to say my review of the transcript easily establishes to my satisfaction that, 
while Abrego may have “provide[d] answers” to Plaintiffs’ counsel’s questions, they were 
nowhere near what was required by Rule 30 and my order. 
 Next, Defendants suggest that they were not in bad faith in perpetuating this fiasco. I 
disagree. 

4 
 Defendants required Tina Cao to respond to discovery requests involving issues that occurred more than four 
years before she was employed by Defendants - and verify them under penalty of perjury – and then be deposed 
about those responses. Her deposition testimony made clear that she was, to quote Plaintiffs, “thrown to the 
wolves” in this litigation. (Rec. doc. 113-5 at pp. 95, 120-121). Then there was the corporate designee for the 
first 30(b)(6) deposition, Dhiya Esmail, who testified that he had minimal involvement with the Ruby 
companies’ operations before 2019. (Rec. doc. 418-3 at p. 10). He did not speak with any employees or other 
persons associated with the corporate Defendants (other than counsel) to obtain the knowledge necessary to 
testify as a 30(b)(6) deponent, nor did he review any documents to prepare for the deposition. (Id. at pp. 6-9). 
It was his inability to answer any questions on topics 3, 6, and 7 that precipitated this Court’s order directing 
 The procedural history surrounding Plaintiffs’ efforts to obtain Rule 30(b)(6) 
depositions and meaningful depositions of the principals, the Esmails, is, to say the least, 
tortured. That history, replete throughout this record and including developments brought 

to the Court’s attention in this motion, establish a pattern of avoidance and dereliction by 
Defendants of their most basic discovery obligations. This recent Rule 30(b)(6) episode is 
just the latest chapter. Unfortunately, it appears that no amount of forbearance by this Court 
can reel Defendants into the place they have needed to be in from the start – nor has the 
procession of new lawyers advising them been able to convince Defendants of the 
 5 
importance of complying with the rules. 
 III.I canT ohnely R heolepvea tnhte Lrualwin ogn o nSa tnhecstieo mnso tions once and for all changes that. 

 There are a number of mechanisms by which district courts exercise sanction powers, 
including the Federal Rules of Civil Procedure (through Rules 11, 26, 30, and/or 37); 28 U.S.C. 
§1927; and the inherent power of the courts to manage their own proceedings and to control 
the conduct of those who appear before them. Regardless of the source, it is widely accepted 
that the primary purpose of sanctions is to deter frivolous litigation and abusive tactSieces., 
Se.agn.,c tPiaovnesl isce e&k LtoeF dloertee rv b. oMtha rtvheel cEunlptearbtalei namtteonrtn eGyr oaunpd members of the bar in general. 
 , 493 U.SF. r1e2d 0A, . 1S2m6i-t2h7 L u(1m9b8e9r) C (ot.h ve. 
pErdiimdianr,y purpose of Rule 11 is deterrence, not compensation); 
 th 
 845 F.2d 750, 752 (7 Cir. 1988)(“the most important purpose of Rule 11 sanctions 
is to deter frivolous litigation and the abusive practices of attorneys”); Gregory P. Joseph, 
5 
 It is worth mentioning here that fully a year ago, the District Judge weighed in on Defendants’ delay tactics 
Sanctions: The Federal Law of Litigation Abuse 
 §47(A) (2d ed.) (the purpose of Rule 37 is four-
fold: “(1) penalizing the culpable party or attorney; (2) deterring others from engaging in 
similar conduct; (3) compensating the court and other parties for the expense caused by the 

abusive conduct; and (4) compelling discovery”); Id. at §20 (the purpose of 28 U.S.C. §1927 
is to deter unnecessary delays in litigation). 
 Whether a court wields its sanction powers underT tohpea Flieadne vr.a El hRrumleasn, 28 U.S.C. §1927, 
or its inherent power, it does so at its “broad discretion.” , 3 F.3d 931, 934 
th 
(5 Cir. 1993). “The discretion vested in the trial court is granted soJ eintsn tinhgosu gvh. Jtofushl ueaxe Ir.Sc.iDse. 
will carry out the educational andc edrett.e drerneinetd functions of the rule.” , 
 th 
948 F.2d 194, 199 (5 Cir. 1991), , 504 U.S. 956 (1992). 
 The Court finds in the present matter that Rule 37 and the cases interpreting its 
sanctions provisions provide the rules of decision. 
 Rule 37(b)(S2a) npcrtoiovnids eSso iung rhetl ienv athnet Dpaisrttr:i ct Where the Action Is Pending. 
 For Not Obeying a Discovery Order 
 (2) 
 (A) . If a party or a party's 
 officer, director, or managing agent—or a witness designated 
 under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to 
 provide or permit discovery, including an order under Rule 
 26(f), 35, or 37(a), the court where the action is pending may 
 issue further just orders. They may include the following: 
 (i) directing that the matters embraced in the order or 
 other designated facts be taken as established for 
 purposes of the action, as the prevailing party claims; 
 (ii) prohibiting the disobedient party from supporting 
 or opposing designated claims or defenses, or from 
 introducing designated matters in evidence; 
 (iii) striking pleadings in whole or in part; 
 (iv) staying further proceedings until the order is 
 obeyed; 
 (v) dismissing the action or proceeding in whole or in 
 part; 
 (vi) rendering a default judgment against the 
 (vii) treating as contempt of court the failure to obey 
 any order except an order to submit to a physical or 
 Paymmeennt toafl Eexxpamenisneastion. 
 . . . . 
 (C) . Instead of or in addition to the orders 
 above, the court must order the disobedient party, the attorney 
 advising that party, or both to pay the reasonable expenses, 
 including attorney's fees, caused by the failure, unless the failure 
 was substantially justified or other circumstances make an 
 award of expenses unjust. 
 Fed. R. Civ. P. 37(b)(2). 

 In the present motion, Plaintiffs ask the Court to assess the most draconian of the Rule 
37 sanctions. They ask the Court to “strike the Defendants’ pleadings, including their 
affirmative defenses, pursuant to its authority under Rule 37(b)(2)(A), or to enter a default 
judgment against them.” (Rec doc. 496-1 at p. 9). Failing the imposition of such sanctions, 
Plaintiffs suggest an alternative, which the Court will discuss below after first addressing the 
request for dispositive sanctions. 
 Sanctions that strike pleadings and defenses or result in the imposition of a default 
judgment are the most severe provided for under Rule 37 and are reserved for the most 
egregious circumstances. This sort of dispositive remedy is reserved exclusively for clear 
records of contumacious and continuing discovery misconduct or delay, ordinarilyD inoev ovl.v Ainmg. 
sAtiurlbinbeosrn resistance to authority by failure to comDapvliys wv.i Athu tmou Clltuipbl eF acmouilryt Ionrsd. eCros.. 
 th 
 , 283 Fed.Appx. 289, 291 (5 Cir. 2008); Fed. Depos, iNt oIn. s0. 7C-oCrVp-. 
8v.5 C4o5n, n2e0r08 WL 5110619 at *1 (E.D. La. Dec. 2, 20E0.E8.)O (.CV.a vn. Gcee,n J.. )D (ycnitaimngic s Corp.
 th 
 , 20 F.3d 1376, 1B3a8ts0o-n8 1v .( N5ea Cl iSrp. 1el9c9e4 A)s; socs., Inc., , 999 F.2d 113, 
 th th 
119 (5 Cir. 1993); and 765 F.2d 511, 515 (5 Cir. 1985)). 
“[I]t is not a party’s negligence–regardless of how careless, inconsiderate, or understandably 
 Brown 
av.u Othilo Srtitayt ews hSikcahg jiuts Stimfiaetsc ao dismissal with prejudice” of a claim or affirMmcaNteivael dv.e Pfeanpsaes.a n
 th 
 , 664 F.3d 71, 77 (5 Cir. 2011) (quoting , 842 
 th 
F.2d 787, 792 (5 Cir. 1988)) (internal quotation omitted). 
 There is a strong argument to be made in this case – and no doubt Plaintiffs’ counsel 
firmly believe that we have reached this point – that Defendants’ conduct has been 
contumacious and represents a stubborn resistance to authority. It is a very close call for the 
Court, but, guided by the ample caselaw teaching how rarely such sanctions should be 
deployed, I will not recommend to the District Judge that he impose what would be case-
dispositive sanctions at this point. That being said, Defendants’ ongoing disruptive and 
dilatory conduct must be met with serious consequences. 
 The alternative sanction sought by Plaintiffs is a request that the Court enter an order 
“(i) directing that the matters embraced in the order or other designated facts be taken as 
established for purposes of the action, as the prevailing party claims; . . .” Fed. R. Civ. P. 
37(b)(2)(i). Specifically, Plaintiffs request in the alternative that the following sanctions are 
app•r opriate: 
 The Court should deem admitted all information and allegations in Exhibit 7 to the 
 30(b)(B6o)u dregposition, including, but not limited to: (1) the findings of the Department 
 of Labor and the agency’s observations in their narrative reports, (2) the allegations 
 in the lawsuit that the corporate defendants did not Vgiavne Cnootttice of the tip credit 
 and manipulated server’s tip amounts to make it appear as though they were earning 
 minimum wage, and (3) the FLSA violations alleged in the FLSA lawsuit, and 
 (4) the allegations in the thirty (30) employee claims/complaints that the corporate 
 designee was unable to answer. This sanction should also include that the foregoing 
 information shall be admissible at trial and that Defendants shall be prohibited from 
 presenting any evidence attempting to contest the matters deemed admitted (along 
 with an appropriate instruction to the jury to be included in the Court’s jury 
 instructions). 
 • 
 The Court should require Defendants to pay the attorney’s fees, costs, and expenses 
 associated with both Rule 30(b)(6) depositions, including the time spent preparing 
 for the depositions and for all motion practice related to same. 

 (Rec. doc. 496-1 at p. 10). 
 The Court will address the request that certain information be deemed admitted first. 
I have closely reviewed the transcript of the two failed corporate depositions as they pertain 
to the allegations Plaintiffs want the Court to deem admitted. There is no doubt whatsoever 
that Plaintiffs have diligently attempted to have Defendants address these allegations on the 
merits for months, if not longer, and these efforts have been stymied at every possible turn 
by Defendants. Most recently, Defendants brazenly went so far as to ignore a Court order on 
this very topic and to present, for a second time, a designee with no personal knowledge of 
the matters within the scope of the deposition notice who made no effort to prepare to testify 
by reviewing documents or speaking with actual, knowledgeable persons. 
 Because the relief requested above is narrowly tailored by addressing the specific 
 6 
allegations and findings that were the subject of two failed corporate depositions and is 
proportional to the ongoing and egregious discovery misconduct described above, I find it is 
entirely appropriate to grant Plaintiffs’ request as a sanction for that misconduct. I will 
recommend to the District Judge that such relief be granted. 
 Before moving to the request for fees and costs associated with the two failed 
depositions, it is important to address two of Defendants’ additional arguments against 
imposition of the sort of sanction I am recommending here. 
6 
 DefendBaonutrsg admiVt ainn tChoetitr opposition memorandum: “Admittedly, the defendants’ designee was unable to 
provide answers to questions regarding the thirty (30) employee claims/complaints regarding compensation 
and the and lawsuits.” (Rec. doc. 498). One is left to wonder how, after years of litigation and 
 Quite incredibly, after twice failing to produce a knowledgeable deponent on topics 3, 
6, and 7 – and blatantly violating a court order in the meantime – Defendants suggest the 
Court should give them yet another chance to make this right by allowing for a third 

corporate deposition on these topics. (Rec. doc. 498 at p. 4). 
 The old saying “insanity is doing the same thing over and over again and expecting a 
different result” is commonly mis-attributed to Albert Einstein, which is fine because I don’t 
have to be Einstein to know what a bad idea it would be to allow Defendants to continue 
playing games with the rules, the Court, and their opponents without consequences. To 
allow this fiasco to continue as Defendants suggest I should would be both foolish and 
patently unfair to Plaintiffs. 
 Finally, Defendants make this bizarre argument against the imposition of sanctions: 

“Typically, Rule 37(b) sanctions are not available until the court has issued a specific 
discovery order so it is clear that the offending partIyd .has been alerted to what is required 
and the potential seriousness of non-compliance.” ( at 5). I am honestly dumfounded by 
this statement. I did issue such a “specific order.” I did make clear what was required of the 
 7 
“offending party.” I did make clear the “potential seriousness of non-compliance.” In fact, I 
actually sanctioned Defendants in that very same order for their previous non-compliance. 
(Rec. doc. 456). I honestly cannot fathom the thinking behind this statement, but that makes 
no difference in the end because despite what they suggest by that statement, this motion is, 
in fact, about Defendants’ clear violation of a discovery order issued by this Court. 

7 
 Turning to Plaintiffs’ request for the additional sanction of attorneys’ fees and costs, 
for the reasons stated above and consistent with the other three occasions on which 
attorneys’ fees have been awarded against Defendants for their misconduct in this case, I will 

award them here: Plaintiffs request fees and costs for both Rule 30(b)(6) depositions and 
all motion practice related to them. (Rec. doc. 496-1 at p. 10). As noted above, though, I have 
already awarded fees in connection with the first deposition and motion. (Rec. doc. 456). 
The question, then, is what is an appropriate award of reasonable fees and costs associated 
with the second, failed deposition and this motion practice. I answer this question in two 
parts. 
 First, I will assess against Defendants what I believe to be a reasonable fee for this 
work, which upon consideration I believe to be $5,000. As for the costs of the second 

deposition, Plaintiffs have not submitted proof of those costs but I will allow them to do so. 
Plaintiffs’ counsel will submit that figure and proof supporting it to Defendants’ counsel. If 
the parties cannot agree that Plaintiffs are entitled to recover that figure pursuant to this 
order, the parties may submit that dispute to me. That effort will also be compensable to the 
prevailing party so I urge the attorneys in the case to act reasonably and make their best 
efforts to resolve that part of this dispute among themselves. 
 Finally, in an effort to fully implement the deterrent purpose of Rule 37 sanctions, I 
will make an additional award to Plaintiffs’ counsel that represents the amount of time the 

Court has had to expend (and waste) dealing with Defendants’ serial violations of the Rules 
and orders of this Court. 
 The matter of the “value” of a federal court’s time for purposes of assessing sanctions 
against a litigant for wasting that time has been the subject of discussion in a number of 
courts over the years. A 1982 study sponsored by the Rand Corporation Institute for Civil 
Justice concluded that a single hour spent Sbeye a federal judge inC oan ttaoirnti ncga steh ec oCsots tt hoef 
Lgoitvigearntimonent approximately $600 in 1982. Levin & Colliers, 

 , 37 Rutgers L. Rev. 219, 21Se9e–,2 e2.g (.,1 L9a8p5in). v T. hUa.St. calculation has been approved and 
adoptedT hbiye ln vu. mFierrsot uFse dceoruarlt sS asvinincges. & Loan Ass'n of Mari,o 1n18 F.R.D. 632, 645-46 (D. Hawaii 
1987); aff’d in part dis’d in part , 646 F.Supp. 592, 598 (N.D. Ind. 
 th 
1986), Dys, o8n2 8v . FS.p2ods e2e1p (7 Cir. 1987)(imposing a sanction of $3,600 
based upon $600 per hour); , 637 F.Supp. 616, 624 (N.D. IAnddv. o1 9S8y6s.), (Iunsci.n vg. 
tWhea lt$e6r0s0/hour formula and stating it would also be used in the future); 
 , 110 F.R.D. 426, 433 (E.D. Mich. 1986)(noting that the court cannot tolerate an 
unnecessary drain on judicial resources caused by actions without merit and that in future 
cases the $600 per hour formula would be used to impose sanctions). 
 With the passage of time, other courts, includiSnege ,t he.igs. ,o Nnoe,g hesasv ev. cPoonytdinrause dC etnot eemr, pLlLoCy 
this formula, adjusting the hourly rate for inflation. Seneca Res. Corp. v. Moody , 
No. 16-CV-15227, 2017 WL 396307 at *14-15 (E.D. La); E, 1nr3i5g hBt. Rv.. 
A26u0to, –2O6w1 n(eBrksp Itncsy. .C So..D. Tex. 1991)(imposing Rule 11 sanctions at $890 per hour); 
 Internatio,n 2a Fl U.Snuipopn. o2fd E 1le0c7t2ro, 1n0ic7, 6E lnec. 2tr (icNa.lD, S. Ianladr. i1e9d9, M8)a(cahdijnues t&in Fgu trhneit ruartee W too $rk9e0r0s 
p(AeFr Lh–oCuIrO)); , Local 84907 v. Visteon Systems, LLC 
 , No. 06-CV-0275, 2007 WL 647499 (S.D. Ind. 

2007)(same). 
 In a 2012 decision citing to the foregoing authority, a court employed the United 
States Department of Labor, Bureau of Labor Statistics, Consumer Price Index Inflation 
Calculator (“CPI Calculator”) to calculate that the $600-per-hour rate in 1982 should be 
 In re Kentwood Pharmacy, L.L.C. 
adjusted to $1,430.58 in 2012. , 475 B.R. 602, 610-12 
(Bkptcy. W.D. Mich. 2012)(citing CPI calculator, found on the web at bls.gov/data/inflation_ 
calculator.htm). This CourSte hea Ns oegmespsl oyed this method to arrive at appropriate sanctions for 

wasting the Court’s time. 2017 WL 396307 at *14-15. 
 This Court finds the foregoing process and reasoning appropriate here. Employing 
the CPI Calculator, the Court finds that an hour of its time in 2020 is worth $1,650 (rounded 
down from $1,656.08). 
 Although the Court has expended substantially more than six hours on the extensive 
discovery litigation occasioned by Defendants’ recalcitrance and misconduct subject of these 
motions, it will assess a sanction in addition to that described above equivalent to six hours 
of itIsV t.i me wCoanstceldu sinio tnhis matter. That figure is $9,900. 

 See 
Sims vL. iAtNigRation is not a game, it is a search forH thaell tvr.u Ftrhe aesned an effort to obtain justice. 
 th th 
 Bintl,i f7f 7v. FU..3Sd. 846, 849 (5 Cir. 1996); , 735 F.2d 956, 961-62 (5 Cir. 
 th 
1984); , 462 F.2d 403, 407 (5 Cir. 1972). Defendants have treated this lawsuit 
as a game from the start – in addition to all of the discovery misconduct discussed here 
already, Defendants have demonstrated their disdain for these proceedings and the rules 
that govern them through, for instance: (1) their apparent efforts to coerce the named 
Plaintiff into quitting the lawsuit by writing her check after suit was filed for $868.00 with 
the words “missing overtime hours” in the memo line (rec. doc. 361-5) and (2) Dhiya 
 8 
Esmail’s direct communication with a Plaintiff in violation of the Court’s protective order 
88 See supra 
 ���� 
(rec. doc. 81), telling her “Ur trying to join a lawsuit against us you have no case .” (Rec. 
doc. 361-1). 

 It also obviously bears mention that this is fourth time in this litigation that Defendants 
are being sanctioned. At some point the Court has to bear down on the deterrent purpose of 
discovery sanctions and decide if that deterrent purpose is to be honored, enough has to be 
enough. 
 That time has arrived. 
 Consistent with the reasons set forth above, the two motions for sanctions (rec. docs. 
361, 496) are granted. The undersigned hereby awards against Defendants the following 
monetary sanctions: (1) $6,000 payable to Plaintiffs’ counsel for the filing of the 

(unopposed) motion to compel, their correspondence and attendance at a status conference 
regarding Defendants’ motion for reconsideration, and the filing of the present first motion 
for sanctions; (2) $5,000 payable to Plaintiffs’ counsel for the filing of the second motion to 
compel and fees associated with the failed second Rule 30(b)(6) deposition of the Plaintiffs; 
(3) $9,900 payable to Plaintiffs’ counsel consistent with the deterrent purpose of Rule 37, 
representing six hours of the Court’s time wasted refereeing disputes that never should have 
arisen; and (4) costs for the second Rule 30(b)(6) deposition to be determined consistent 
with this opinion as set forth above. 

 Additionally, the undersigned recommends to the District Judge the following 
additional sanction be assessed against Defendants for the blatant violation of this Court’s 
order (rec. doc. 456) and the misconduct that preceded it: 
 It is recommended that the District Judge deem admitted all information and 
findings of the DepartmenBto oufr Lgabor and the agency’s observations in their narrative reports, 
(2) the allegations in the lawsuit that the corporate defendants did not give notice of 
the tip credit and manipulated server’s tip amounts to make iVt aanp Cpoetatr as though they were 

earning minimum wage, (3) the FLSA violations alleged in the FLSA lawsuit, and (4) 
the allegations in the thirty (30) employee claims/complaints that the corporate designee 
was unable to answer. This sanction should also include that the foregoing information shall 
be admissible at trial and that Defendants shall be prohibited from presenting any evidence 
attempting to contest the matters deemed admitted (along with an appropriate instruction 
to the jury to be included in the Court’s jury instructions). 
 I sincerely hope and expect that these sanctions will resonate with Defendants and 
bring them in line with the rules and their obligations to litigate this matter in good faith. I 
expect any remaining discovery to pro2cneded apace and wNitohvoeumt abdedritional issues. 

 New Orleans, Louisiana, this day of , 2020. 

 MICHAEL B. NORTH 
 UNITED STATES MAGISTRATE JUDGE